UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **LITHIA RAMSEY-T, LLC d.b.a. PRESTIGE TOYOTA OF RAMSEY,**<br><br>                    **Plaintiff,**<br><br>v.<br><br>**CITY LINE AUTO SALES, LLC, STEVEN SAFI, REGINALD BOYD, JR., and RENE VAZQUEZ TURPEAU,**<br><br>                    **Defendants.** | Civ. No. 22-03592 (KM)(CLW)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

    This matter concerns a Mercedes automobile that was allegedly fraudulently procured from the plaintiff's car dealership and later sold with a duplicate, fictitious title. Default has been entered as to two defendants, Reginald Boyd, Jr., and Rene Vazquez Turpeau, both of whom failed to respond to the complaint or otherwise appear. (Entries after DE 21 and DE 24.)[1] The remaining defendants, City Line Auto Sales and its owner, Steven Safi, have moved to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(1),

---

[1]    Certain key citations to the record will be abbreviated as follows:

    DE = Docket entry in this case

    Compl. = Amended complaint (DE 12)

    Mot. = City Line defendants' brief in support of the motion to dismiss (DE 19-1)

    Opp. = Prestige's brief in opposition to the motion to dismiss (DE 25)

    Decl. = Declaration of Bruce E. Baldinger in opposition to the motion to dismiss (DE 25-1)

1

12(b)(2), and 12(b)(6). (DE 19.) For the reasons set forth below, the motion to dismiss is **GRANTED.**

I. **Background**

The allegations of the amended complaint are as follows. Plaintiff Lithia Ramsey-T, LLC, d.b.a. Prestige Toyota of Ramsey ("Prestige") is a Toyota franchisee and owner of a car dealership in Ramsey, New Jersey. (Compl. ¶2.) Defendant City Line Auto Sales ("City Line") is a Pennsylvania-based wholesale seller of motor vehicles to car dealerships. (*Id.* ¶3.)

On April 16, 2022, defendant Reginald Boyd, Jr. visited the Prestige dealership in Ramsey with the intent of buying a used automobile. (Compl. ¶9.) After selecting a 2018 Mercedes Benz E400 Coupe for purchase, Boyd provided his financial information and requested that Prestige arrange financing for him. (*Id.* ¶¶10, 42.) The agreed-upon price of the vehicle was $40,595. (*Id.* ¶42.)

Prestige informed Boyd that a lender called Driveway Finance Corp. ("Driveway") was willing to provide him with a loan, subject to verification of certain personal and financial information. (Compl. ¶11.) Prestige permitted Boyd to use the vehicle during this verification process with the assurance that Boyd would return the vehicle if financing was not ultimately secured. (*Id.* ¶12.)

After Boyd took possession of the car and submitted his information to Driveway, Prestige learned that the information Boyd had provided, including his social security number, was false. (Compl. ¶13.) Prestige contacted Boyd, who apologized and provided a different social security number. (*Id.* ¶14.) That number proved to be false as well. (*Id.*) Unsurprisingly, after learning that Boyd had provided false information a second time, Driveway informed Prestige that it was unwilling to proceed with the loan and that it would be placing Boyd on its restricted borrower list. (*Id.* ¶15.)

Suspicious of fraud, Prestige demanded that Boyd return the vehicle immediately. (Compl. ¶16.) Prestige then discovered through a Google search that Boyd had previously been arrested for identity theft involving twenty different individuals and, in a separate incident, for selling fake iPhones. (*Id.*

2

¶17.) In response to Prestige's demand that he return the vehicle, Boyd stated that he was unable to do so. (*Id.* ¶18.) He later stated that his brother had sold the vehicle and that it could be found on the lot of Phillipsburg Easton Honda ("P.E. Honda") in New Jersey. (*Id.* ¶19.)

Prestige did not understand how the vehicle could have been sold while Prestige still possessed the title. Prestige ran a CarFax report, which indicated that a duplicate title had been issued on May 19, 2022. (Compl. ¶20.) The report also confirmed that the vehicle had been sold to P.E. Honda on May 26, 2022. (*Id.* ¶21.)

Prestige contacted P.E. Honda later that month and notified it that a vehicle owned by Prestige was currently on its lot and that the vehicle had been procured by fraud. (Compl. ¶22.) P.E. Honda explained that it had acquired the vehicle in question from defendant City Line. (*Id.*) After learning of the fraud, P.E. Honda forced City Line to take back the vehicle. (*Id.*) City Line has refused to return the vehicle to Prestige without the payment of $34,000. (*Id.* ¶23.)

In a certification to the Court, City Line's owner, Steven Safi, represented that City Line had purchased the vehicle from defendant Rene Vazquez Turpeau for $33,000 on May 24, 2022. (Compl. ¶24.) Prestige does not appear to dispute this fact, having included it as an allegation in the amended complaint.

## II.   Procedural history

On June 8, 2022, Prestige commenced this action against Boyd, City Line, and Safi and applied for a preliminary injunction against all defendants that would prevent them from operating the vehicle, selling it, or encumbering it. (DE 1-14.) That same day, the Court issued an order to show cause why a preliminary injunction should not be granted. (DE 3.) City Line and Safi filed a written response on June 14, 2022, as required by the Court's order. (DE 4.) They indicated in their response that they did not oppose a temporary order prohibiting them from operating, selling, or transferring the vehicle, so long as they were not compelled to transfer the vehicle to Prestige at that time. (*Id.*)

3

Also as required by the Court's order, City Line and Safi appeared for a show cause hearing on June 17. (DE 6.) Boyd neither filed a written response to the order nor appeared at the hearing. (*Id.*) Following the hearing, the Court issued a preliminary injunction pendente lite prohibiting the defendants from operating, selling, transferring, assigning, encumbering, or hypothecating the vehicle until further order of the Court. (DE 7.)

On June 21, 2022, Safi filed the aforementioned certification, in which he stated that City Line had purchased the vehicle from Turpeau. (DE 9.) Two days later, Prestige amended its complaint to add Turpeau as a defendant. (DE 12.)

The amended complaint contains four counts. Count 1 asserts a claim for impersonation and identity theft, pursuant to N.J. Stat. Ann. 2C:21-17, against all defendants. (Compl. ¶¶29-43.) Counts 2 and 3 assert claims of fraud and conversion against Boyd only. (*Id.* ¶¶44-57.) Count 4, asserted against all defendants, raises a claim of unjust enrichment. (*Id.* ¶¶58-61.)

In July and August 2022, default was entered as to Boyd and Turpeau, both of whom had failed to answer or otherwise appear in the action. (Entries after DE 21 and DE 24.) Also in July, City Line and Safi—whom I will refer to collectively as "the City Line defendants"—moved to dismiss the amended complaint. (DE 19.) Prestige filed a brief in opposition to the motion in August. (DE 25.)

### III. Discussion

The City Line defendants moved to dismiss the claims against them on three grounds: lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(1), (b)(2), (b)(6). I will address the jurisdictional arguments first and turn to the substance of the claims only if jurisdiction is established. *See GBForefront, L.P. v. Forefront Mgmt. Grp.*, LLC, 888 F.3d 29, 34 (3d Cir. 2018) ("It is fundamental that federal courts must have subject matter jurisdiction before reaching the merits of a case."); *Wyrough & Loser, Inc. v. Pelmor Labs.*,

4

*Inc.*, 376 F.2d 543, 547 (3d Cir. 1967) ("preliminary matters such as ... personal jurisdiction ... should be raised and disposed of before the court considers the merits or quasimerits of a controversy").

### A. Subject matter jurisdiction

The amended complaint states that this Court has subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(a), as the dispute involves citizens of different States and the amount in controversy exceeds $75,000. (Compl. ¶7.) The City Line defendants argue that the amended complaint fails to plead sufficient facts to demonstrate both that all defendants are diverse from the plaintiff and that the amount in controversy requirement is met.

Beginning with diversity, the amended complaint alleges that Prestige is a New Jersey limited liability company. (*Id.* ¶2.) With respect to the defendants, it is alleged that Boyd is a Connecticut citizen, Turpeau and Safi are Pennsylvania citizens, and City Line is a Pennsylvania limited liability company. (Compl. ¶¶3-6.)

As the City Line defendants point out, a limited liability company ("LLC") is an unincorporated entity whose citizenship is determined not by the State of organization and principal place of business (as it is for a corporation), but by the citizenship of all of the entity's constituent members. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104-05 (3d Cir. 2015). Complete diversity exists only where all of an LLC's members are diverse from all parties on the opposing side. *Id.* Thus, the Court cannot ascertain the citizenship of both Prestige and City Line on the basis of the amended complaint, as it fails to allege the names of all of the members of both LLCs and where they reside. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) ("A natural person is deemed to be a citizen of the state where he is domiciled.")

In its opposition brief, Prestige states that it is a wholly owned subsidiary of Lithia Motors, Inc., which is a publicly traded corporation formed and headquartered in Oregon. (Opp. 8; Decl. ¶7.) As for City Line, Prestige asserts

5

that it has conducted a search of business records on the Pennsylvania Department of State website and that the records list Safi as City Line's sole organizer with an address in Pennsylvania. (*Id.*) No other members are listed, and City Line did not indicate in its moving brief that it has any additional members. Prestige argues that under the Third Circuit's decision in *Lincoln Benefit Life Co. v. AEI Life, LLC*, these assertions are sufficient to defeat a facial challenge to diversity. (*Id.*)

In *Lincoln*, the Third Circuit recognized that "[a] plaintiff who files suit in federal court may face significant difficulties when jurisdiction is premised on diversity and the defendant is an unincorporated association such as a partnership or limited liability company." 800 F.3d at 102. Because the membership of an LLC is often not a matter of public record, a plaintiff might be unable to determine the citizenship of an LLC "even after a diligent pre-filing investigation." *Id.* To account for this difficulty, the Third Circuit held that "a plaintiff need not affirmatively allege the citizenship of each member of an unincorporated association in order to get past the pleading stage." *Id.* Rather, a complaint will survive a facial challenge to subject matter jurisdiction "if the plaintiff is able to allege in good faith, after a reasonable attempt to determine the identities of the members of the association, that it is diverse from all of those members." *Id.*

A challenge to subject matter jurisdiction is facial where it concerns the sufficiency of the allegations, accepted as true. *Lincoln*, 800 F.3d at 105. A factual challenge, on the other hand, concerns the failure of the allegations to comport with the true facts. *Id.* In this case, the City Life defendants have mounted a facial challenge to diversity jurisdiction. They argue that the pleadings fall short of establishing diversity jurisdiction, not that City Life and Prestige are in fact citizens of the same State.

Based on the assertions in Prestige's opposition brief, it appears that Prestige is able to allege complete diversity in good faith, as permitted by *Lincoln*. Prestige is evidently a citizen of Oregon, and it is reasonable to believe

6

that none of City Line's members are Oregon citizens, nor are any of the individual defendants. However, in reviewing a facial attack on subject matter jurisdiction, I am limited to the pleadings and may not consider allegations made in briefing. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000), holding modified by *Simon v. United States*, 341 F.3d 193 (3d Cir. 2003). I will therefore permit Prestige to amend its complaint a second time to add its good-faith allegations of complete diversity.

Turning to the amount in controversy requirement, the City Line defendants argue that the amended complaint fails to allege damages in excess of $75,000. (Mot. 4.) A brand-new Mercedes Benz of the same model as the vehicle at issue has a market value of approximately $80,000, they maintain. Given that the vehicle at issue is four years old, it cannot possibly be worth more than $75,000. (*Id.*)

While the party invoking federal diversity jurisdiction bears the burden of demonstrating that the amount in controversy exceeds $75,000, this burden is "not especially onerous," as the "'sum claimed by the plaintiff controls if the claim is apparently made in good faith.'" *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.,* 835 F.3d 388, 395 (3d Cir. 2016) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)). Moreover, in calculating the amount in controversy, a district court must consider both actual and punitive damages, assuming the latter are recoverable. *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993). The court must also consider potential attorney's fees if such fees are available under the statutory cause of action. *Suber v. Chrysler Corp.,* 104 F.3d 578, 585 (3d Cir. 1997), *as amended* (Feb. 18, 1997).

Count 1 of the complaint is brought pursuant to N.J. Stat. Ann. 2C:21-17.4, which creates a private right of action for an individual defrauded by another person's use of that individual's personal identifying information. The statute provides that a court *shall* award in such an action—in addition to any other appropriate legal or equitable relief—"damages in an amount three times

the value of all costs incurred by the victim as a result of the person's criminal activity." N.J. Stat. Ann. 2C:21-17.4 (emphasis added). The statute also authorizes the recovery of attorneys' fees incurred by the individual. *Id.* Accordingly, if Prestige succeeds on its claim for identity theft under N.J. Stat. Ann 2C:21-17, it is entitled to recover treble damages as well as attorneys' fees.

Prestige agreed to sell Boyd the vehicle for $40,595. (Compl. ¶42.) Prestige maintains that it was entitled to more than that amount in light of the separate financing agreement, but even without considering the financing aspect, Prestige has met the jurisdictional requirement. Should Prestige succeed on Count 1 only, it would receive at least $121,785 in treble damages, and potentially more in attorney's fees. This is sufficient to satisfy the amount-in-controversy requirement.

### B. Personal jurisdiction

Having determined that Prestige will be able to establish subject matter jurisdiction by amending its pleading, I now consider whether the Court has personal jurisdiction over the City Line defendants. Mounting another facial attack, the City Line defendants argue that the amended complaint fails to plead sufficient facts to demonstrate the necessary minimum contacts between each of them and the State of New Jersey. (Mot. 6.)

Before considering this argument, I will address Prestige's claim that the City Line defendants have waived any defects in personal jurisdiction. According to Prestige, by filing a response to the order to show cause and consenting to the Court's imposition of injunctive relief over them, the City Line defendants have already submitted to this Court's exercise of jurisdiction over them. (Opp. 22.)

It is true that a party may waive a personal jurisdiction argument by engaging in behavior that "amount[s] to a legal submission to the jurisdiction of the court." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704–05 (1982). As the Third Circuit has explained, "a party is deemed to have consented to personal jurisdiction if the party actually litigates the underlying merits or demonstrates a willingness to engage in extensive

litigation in the forum." *In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.*, 15 F.3d 1230, 1236 (3d Cir. 1994). "In particular, where a party seeks affirmative relief from a court, it normally submits itself to the jurisdiction of the court with respect to the adjudication of claims arising from the same subject matter." *Bel-Ray Co. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999) (citing *Adam v. Saenger*, 303 U.S. 59, 67 (1938)).

That said, "[w]hether a party has waived personal jurisdiction is decided on a case-by-case basis." *KDH Elec. Sys., Inc. v. Curtis Tech. Ltd.,* No. CIV.A.08-2201, 2010 WL 1047807, at *4 (E.D. Pa. Mar. 19, 2010) (citing *Wyrough*, 376 F.2d at 547). A court must balance two countervailing policies: the desire not to place parties "in a procedural strait jacket by requiring them to possibly forego valid defenses by hurried and premature pleading," and the desire to conserve juridical time and effort by disposing of preliminary matters like personal jurisdiction before the court considers the merits of the controversy. *Wyrough, supra*, at 547.

In this case, the balance of these concerns weighs in favor of a conclusion that the City Line defendants did not waive a personal jurisdiction argument. The City Line defendants neither sought affirmative relief from the Court nor demonstrated a willingness to engage in extensive litigation in this forum. Rather, Prestige sought affirmative relief in the form of a preliminary injunction, and the City Line defendants merely filed a written response and appeared in person as required by the Court's order to show cause.

Although the Third Circuit held in *Wyrough* that the defendant had waived a personal jurisdiction defense after failing to assert it in proceedings on the plaintiff's motion for a preliminary injunction, that case is distinguishable from the present circumstances. There, the defendant participated in four days of hearings on the plaintiff's motion for a preliminary injunction, including by cross-examining the plaintiff's witnesses and presenting affidavits and defense testimony. *Wyrough*, 376 F.2d at 545. Significant Court time and resources were expended during these proceedings,

9

after which the Court made findings of fact and conclusions of law. *Id.*

Because the City Line defendants did not oppose the issuance of a preliminary injunction restraining them from selling or transferring the vehicle, the Court was not required to resolve factual or legal disputes prior to granting Prestige its requested relief. To the contrary, the parties agreed to preserve the status quo. (DE 5.) A finding that the City Line defendants submitted to the Court's exercise of personal jurisdiction over them through such cooperation is unwarranted. I therefore must assess whether the exercise of personal jurisdiction over the City Line defendants is proper.

"[T]o exercise personal jurisdiction over a defendant, a federal court sitting in diversity must undertake a two-step inquiry." *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 258–59 (3d Cir. 1998). First, the court must apply the long-arm statute of the state in which it sits to determine whether exercising personal jurisdiction over the defendant is permitted. *Id.* Second, the court must evaluate whether exercising personal jurisdiction under the given circumstances would be consistent with the requirements of the Due Process Clause of the United States Constitution. *Id.* For a federal court sitting in New Jersey, "this inquiry is collapsed into a single step because the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *Id.*

"Due process requires an individual [or entity] to establish meaningful contacts with the forum state before the individual [or entity] may be subjected to binding judgments in that state." *Schneider & Marquard, Inc. v. Facil, LLC*, 2007 WL 2814600, No. 07-CV-182 (JLL), at *3 (D.N.J. Sept. 25, 2007) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471-472 (1985)). Depending on the nature and extent of these contacts, a court may exercise either general jurisdiction or specific jurisdiction over the defendant. Specific jurisdiction requires a connection between the defendant's contacts with the forum and the plaintiff's cause of action, whereas a defendant subject to general jurisdiction in a forum may be sued there regardless of whether the suit is related to the

defendant's contacts. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009). A defendant must therefore have much more extensive contacts with a forum in order for general jurisdiction to apply.

Where a defendant challenges the existence of personal jurisdiction, the plaintiff bears the burden of demonstrating that it exists. *Metcalfe*, 566 F.3d at 330. In deciding a motion to dismiss for lack of personal jurisdiction, "a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003).

### i. Specific jurisdiction

I begin with an analysis of specific jurisdiction. In general, a plaintiff seeking to establish specific jurisdiction must show that (1) the defendant "purposefully directed its activities" at the forum, (2) the litigation "arises out of or relates to" at least one of those activities, and (3) the exercise of jurisdiction otherwise "comports with fair play and substantial justice." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted). The Third Circuit has, however, outlined a more targeted test for determining whether a court may exercise specific jurisdiction over nonresident defendants who allegedly commit an intentional tort outside of the forum. *See IMO Indus.*, 155 F.3d at 256. Prestige argues that application of this test, which is based on the Supreme Court's holding in *Calder v. Jones*, 465 U.S. 783 (1984), demonstrates that the Court may exercise specific jurisdiction over the City Line defendants in this matter.

*Calder* involved an allegedly defamatory article written and edited by residents of Florida and published in a national newspaper. 465 U.S. at 784-86. The plaintiff was an entertainer whose television career was centered in California. *Id.* She sued the writer and editor in California, and the defendants moved to dismiss for lack of personal jurisdiction. *Id.* The Supreme Court held that the exercise of personal jurisdiction was proper despite the fact that the defendants' conduct occurred entirely in Florida. *Id.* at 788-89. The Court

11

reasoned that California was the "focal point" both of the article and the harm suffered. *Id.* Thus, specific jurisdiction existed by nature of the "effects" of the defendants' Florida conduct in California. *Id.*

The *Calder* test, as articulated by the Third Circuit, consists of three prongs:

> First, the defendant must have committed an intentional tort. Second, the plaintiff must have felt the brunt of the harm caused by that tort in the forum, such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of the tort. Third, the defendant must have expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity.

*IMO Indus.*, 155 F.3d at 256.

According to Prestige, the City Line defendants "knowingly created a duplicate title with the intent to strip ownership from [Prestige]," a New Jersey company. (Opp. 18) Because this tortious activity was directed at a New Jersey business, says Prestige, the "effects" were felt in New Jersey, and specific jurisdiction is proper under *Calder*. (*Id.*)

The problem with Prestige's argument is that the amended complaint does not adequately allege the City Line defendants' involvement in creating the duplicate title. Instead, it alleges that *Turpeau* "caused a duplicate title to be issued in its name on May 24, 2022," and that City Line merely purchased the vehicle from Turpeau for $33,000. (Compl. ¶¶24, 37.) Furthermore, it alleges that City Line "failed to utilize sufficient due diligence" in purchasing the car and relied upon Turpeau's driver's license and its knowledge of Turpeau based on a single previous interaction. (*Id.* ¶38.) This suggests that City Line did not work with Turpeau to create the duplicate title; at best it suggests a possible basis to suspect fraud, if that.

True, there is an allegation that, because Prestige had the original title in its possession, "City Line, Turpeau, Safi, and Boyd must have necessarily impersonated and/or forged the signature of an authorized agent of Prestige." (Compl. ¶37.) But this is merely a conclusory statement and an impermissible group allegation. With respect to City Line and Safi, the amended complaint

fails to plead sufficient factual matter to render this conclusion plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (to avoid dismissal, a complaint must set out "sufficient factual matter" to show that the claim is facially plausible).

Considering only the facts alleged, and taking them as true for purposes of this motion, the City Line defendants did not "expressly aim" their conduct at the State of New Jersey, as required by the third prong of the *Calder* test. *See IMO Indus.,* 155 F.3d at 256. All that is alleged is that the City Line defendants purchased a vehicle in Pennsylvania from a Pennsylvania resident without adequate investigation of the vehicle's history. There is no allegation that they knew doing so would cause harm in New Jersey, as there is no allegation that they knew the vehicle was procured by fraud from a New Jersey company. *See id.* at 261 (noting that it was "essential" in *Calder* that "the defendants knew that the 'brunt' of the injury caused by their tortious acts would be felt by the plaintiff in the forum"). Consequently, the Court may not exercise specific jurisdiction over the City Line defendants by virtue of the *Calder* test.[2]

Prestige argues alternatively that personal jurisdiction can be based on City Line's participation in a conspiracy to defraud Prestige in New Jersey. (Opp. 18-19.) But a conspiracy claim is not raised in the complaint, nor are the elements of conspiracy, or sufficient facts in support, pled. "In New Jersey, a civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in

---

[2] Prestige argues that the fact that City Line sold the vehicle to P.E. Honda, which is also a New Jersey business, further demonstrates that jurisdiction is proper under *Calder*. (Opp. 18.) But the allegedly tortious conduct at issue was not the selling of the vehicle to P.E. Honda; it was the creation of the duplicate title. The "effects" of creating the duplicate title were felt in New Jersey by Prestige and would have been felt regardless of where the vehicle ended up. That the vehicle was sold to a New Jersey dealer has no bearing on the *Calder* analysis.

13

damage.'" *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 177 (2005) (quoting *Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993), *certif. denied,* 135 N.J. 468 (1994)). The amended complaint contains no allegation of an agreement between City Line and Turpeau, or between City Line and anyone else.

Accordingly, I conclude that Prestige has not made out a prima facie case of specific jurisdiction.

### ii.     General jurisdiction

The exercise of general jurisdiction is proper where the defendant's "affiliations with the state are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler, supra* at 137 (quoting *Goodyear, supra* at 924). With respect to a corporation, the paradigm forums are the place of incorporation and the principal place of business. *Daimler, supra.*

As the Supreme Court has explained, general jurisdiction may be exercised over a corporate defendant in a forum other than its place of incorporation or principal place of business only in the "exceptional case." *Daimler*, 571 U.S. at 139, n.19. In such an "exceptional case," the corporation's operations in the forum are "so substantial and of such a nature as to render the corporation at home in that State." *Id.* Courts have applied this rule to limited liability companies with equal force. *Griggs v. Swift Transportation Co.,* No. 217CV13480MCASCM, 2018 WL 3966304, at *2 (D.N.J. Aug. 17, 2018).

Beginning with Safi, the amended complaint states that he is a Pennsylvania resident. (Compl. ¶4.) The Court therefore does not have general jurisdiction over him as an individual. As for City Line, the amended complaint states that City Line is a Pennsylvania company with offices in Pennsylvania. (*Id.* ¶3.) Prestige argues, however, that "state lines are not an impediment to

14

the conducting of business," implying that City Line regularly engages in business in New Jersey. That City Line allegedly resold Prestige's vehicle to a New Jersey dealership is the single fact pled in support of that inference.

That single fact falls far short of a sufficient allegation that City Line's operations in New Jersey are "so substantial and of such a nature as to render [City Line] at home" in New Jersey. *See Daimler*, 571 U.S. at 139, n.19. The allegations are perhaps suggestive, but no more.

Prestige has requested that it be permitted to engage in jurisdictional discovery should the Court find its allegations lacking. I will grant that request. *See Marchionda v. Embassy Suites, Inc.*, 122 F.Supp.3d 208, 211 (D.N.J. 2015) (citing *Toys 'R' Us*, 318 F.3d at 456) (explaining that jurisdictional discovery is generally permitted unless the plaintiff's jurisdictional claims appear "clearly frivolous").[3]

Given that it has not yet been established that the Court may exercise personal jurisdiction over the City Line defendants, I will not now address their arguments that the amended complaint should be dismissed for failure to state a claim. These arguments may be renewed if and when jurisdiction is established.

## IV. Conclusion

The motion to dismiss is **GRANTED** and the amended complaint is dismissed without prejudice to the filing of a second amended complaint that cures the jurisdictional defects in the pleading identified above. The plaintiff is granted leave to obtain targeted jurisdictional discovery under the supervision of the assigned Magistrate Judge. An appropriate order will issue.

Dated: February 9, 2023

/s/ Kevin McNulty

---

**KEVIN MCNULTY**
**United States District Judge**

---

[3]  In any amended pleading, Prestige may, if it chooses, add allegations to attempt to establish specific jurisdiction over Safi.